# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

U.S. Bank Trust NA as Trustee for Waterfall Victoria Grantor Trust II, Series G, Appellant,

v.

Jamie Singleton and Indigo Pointe Homeowners' Association, Defendants,

of which Jamie Singleton is the Respondent.

Appellate Case No. 2024-000122

———————————

Appeal From Dorchester County
James E. Chellis, Master-in-Equity

———————————

Opinion No. 6160
Heard December 9, 2026 – Filed August 12, 2026

———————————

**REVERSED AND REMANDED**

———————————

Dean Anthony Hayes, of McCabe, Trotter & Beverly, P.C., John P. Fetner, of Holder, Padgett, Littlejohn & Prickett, LLC, and Jonathan Michael Riddle, of The Jeffcoat Firm Injury & Accident Lawyers, PA, all of Columbia; Elizabeth Rice Polk, of West Columbia; and January N. Taylor, of McMichael Taylor Gray, LLC, of Peachtree Corners, GA, all for Appellant.

William H. Sloan, Jr., of Sloan Law Firm, PA, of Summerville, and William Jeffrey Barnes, of Appellate Practice Law Group PLLC, of Boca Raton, FL, for Respondent.

**MCDONALD, J.:** In this lengthy mortgage foreclosure action, U.S. Bank Trust N.A., as Trustee for Waterfall Victoria Grantor Trust II, Series G (Waterfall) appeals a series of orders from the Dorchester County master-in-equity. We reverse and remand for proceedings consistent with this opinion.

**Facts and Procedural Background**

In 2011, 50 by 50 REO, LLC (50 by 50), sought foreclosure after Singleton defaulted on payments due on an Adjustable Rate Note (the Note) "in the principal sum of $212,000.00, payable in monthly installments to People's Choice Home Loans, Inc., its successors and assigns." The Note is secured by a mortgage on Singleton's property in North Charleston (the Mortgage).

In May 2011, Singleton moved to dismiss, claiming he obtained a mortgage securitization audit detailing errors "in the Assignment of Mortgage of 2008 from MERS, Inc. on behalf of People's Choice Home Loan, Inc. to GMAC Mortgage, LLC, GMAC Mortgage Corp. which make it void or, at the very least, dubious as far as the validity of the Assignment of Note and Mortgage."[1]

50 by 50 notified Singleton of his right to seek foreclosure intervention, and the parties agreed to stay the case while Singleton's eligibility was considered. The case was later restored to the active roster and referred to the master. In June 2012, 50 by 50 moved for summary judgment.

A kitchen fire damaged Singleton's property on June 17, 2012. He filed a claim with Liberty Mutual and gave prompt notice of the claim to AMS, the loan servicer at the time of the fire. After settling their claim, Singleton and his wife endorsed the claims proceeds check and sent it to AMS, but "Singleton had no agreement with the holder of the Note or its servicer for the proceeds to be used to pay the Note payments." The master found AMS failed to either return the proceeds to Singleton or pay the proceeds to his contractor.

Following a June 2012 hearing, the master denied Singleton's motion to dismiss. After Singleton filed a September 2012 motion to disburse the insurance proceeds

---

[1] People's Choice filed for bankruptcy in 2007. Mortgage Electronic Registration Systems (MERS) assigned the Note and Mortgage to GMAC Mortgage, LLC, in 2008. In 2011, GMAC assigned the Note and Mortgage to 50 by 50.

"consistent with the wishes of the contractor," 50 by 50 moved to substitute U.S. Bank, N.A., as Trustee of the FRT 2011-1 Trust (US Bank) for 50 by 50 as plaintiff.[2]  After another hearing, the master denied Singleton's motions to disburse the insurance proceeds, for a more definite statement, and to dismiss or stay; granted 50 by 50's motion to substitute US Bank as plaintiff; and continued 50 by 50's motion for summary judgment.  Singleton filed his own motion for summary judgment in September 2013.

In October 2013, the parties entered a consent scheduling order providing all dispositive motions "shall be filed on or before February 7, 2014," and setting the case for trial "not before February 26, 2014."  After another hearing, the master denied Singleton's motion for summary judgment.  In September 2014, the master denied Singleton's motion to compel discovery and granted him leave to amend his answer and counterclaim "to bring third-party claims against persons or entities [Singleton] asserts are necessary and proper parties to a fair and just determination of the issues before the Court."  In October 2014, Singleton again moved to amend his answer to add a counterclaim and additional defendants.  Yet another motion to amend followed.  In April 2015, the master granted Singleton's motion to amend, and his subsequent amended counterclaim and crossclaims added eight new parties to the action.  In September 2015, US Bank moved to substitute US Bank Trust, National Association, not in its individual capacity but solely as owner trustee of Westvue NPL Trust, Series 2014-1 (US Bank Trust) as plaintiff, and the master ordered substitution.

In May 2016, Singleton moved to compel prior plaintiff US Bank's discovery responses.  After another hearing, the master granted Singleton's motion to compel. In September 2017, Singleton filed a second motion to disburse the insurance proceeds, and US Bank Trust moved to substitute Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust (Wilmington Savings) as plaintiff.  In September 2017, the parties filed a stipulation as to the amendment of the pleadings and substitution of the plaintiff, and the master granted the requested relief.

The master issued another amended scheduling order in July 2018.  Singleton then filed another amended answer, counterclaim, and crossclaims, asserting defenses of lack of standing; waiver and laches; unclean hands; bad faith and unfair dealing; "separation of the note and mortgage;" and judicial estoppel.  He also counterclaimed to quiet title and for declaratory relief.

---

[2] 50 by 50 assigned the Note and Mortgage to US Bank on September 24, 2012.

The crossclaim defendant, US Bank, NA, as Trustee for FRT 2011-1 (FRT Trust) moved for summary judgment in November 2018. Singleton and Wilmington Savings' motions for summary judgment followed. The master's February 2019 order granted FRT Trust's motion for summary judgment. Singleton filed another motion to dismiss in October 2019, as well as a motion to continue the trial set to begin on November 21, 2019. Following an October status conference, the master ordered Wilmington Savings to respond to outstanding discovery.

In February 2020, Wilmington Savings filed a proposed order and motion to substitute Waterfall as plaintiff.[3] The master denied this motion to substitute; he also denied Singleton's motion to dismiss but granted Singleton's motions to continue the trial and to compel Wilmington Savings to provide information regarding the assignment to Waterfall.

The master held another status conference in July 2020, and granted Singleton's request to take the Rule 30(b)(6), SCRE, deposition of a Wilmington Savings designee. In September 2020, Wilmington Savings moved to dismiss its foreclosure action due to the master's denial of its motion to substitute because it was no longer the holder of the Note and Mortgage. Following a November 2020 hearing, the master vacated his February 2020 order denying Wilmington Savings' motion to substitute Waterfall. This March 2021 order also denied as moot the motions to dismiss filed by Wilmington Savings and Singleton.

In November 2021, Singleton filed his third motion for summary judgment, which the master denied; the master also directed further discovery (inspection of the Note in Boca Raton) in a February 2022 order. Waterfall filed a motion for summary judgment with supporting documentation in September 2022. In October 2022, Singleton filed a fourth motion for summary judgment, which the master denied. Following a hearing, the master issued a November 21, 2022 order granting Waterfall's motion for summary judgment (Summary Judgment Order). The master ruled Waterfall was the holder of the Note and Mortgage and entitled to foreclose; however, he denied Waterfall any interest on the principal debt from the date of default through the date of judgment, as well as recovery of any escrow charges, corporate advances, or attorney's fees and costs. On December 1, 2022, Waterfall filed a Rule 59(e), SCRCP, motion to alter or amend the Summary

---

[3] US Bank Trust assigned the Note and Mortgage to Wilmington Savings in 2016; Wilmington Savings assigned the instruments to Waterfall on February 3, 2020.

Judgment Order as to the denial of prejudgment interest, escrow charges, corporate advances, and attorney's fees and costs. The master then issued a March 28, 2023 Form 4 order (the Form 4 Order) purportedly vacating, *sua sponte*, the Summary Judgment Order and dismissing as moot Waterfall's Rule 59(e) motion.

A three-day trial began in June 2023. On December 12, 2023, the master granted Waterfall judgment on the principal balance of the Note but denied its requests to foreclose and for other relief (the Trial Order).

On December 22, 2023, Waterfall moved to alter or amend the Trial Order's denial of interest, costs, and attorney's fees; finding that Waterfall, although holder of the Note, did not likewise hold the Mortgage; and award of the insurance proceeds to Singleton. The master granted Waterfall's Rule 59(e) motion to the extent the Note provided for reasonable attorney's fees (the Rule 59(e) Order).[4]

On January 29, 2024, Waterfall filed a notice of appeal as to the Summary Judgment Order, the Form 4 Order vacating the Summary Judgment Order and finding Waterfall's 59(e) motion moot, the Trial Order denying Waterfall foreclosure but granting judgment on the Note, and the Rule 59(e) Order.

**Standard of Review**

"A mortgage foreclosure is an action in equity. Our scope of review of a case heard by a master who enters a final judgment is to determine facts in accordance with our own view of the preponderance of the evidence." *E. Sav. Bank, FSB v. Sanders,* 373 S.C. 349, 354, 644 S.E.2d 802, 805 (Ct. App. 2007) (quoting *Hayne Fed. Credit Union v. Bailey,* 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997)).

**Analysis**

### I.   The *Sua Sponte* Form 4 Order and Master's Lack of Jurisdiction

Relying on *Ness v. Eckerd Corp.*, 350 S.C. 399, 566 S.E.2d 193 (Ct. App. 2002) and *Heins v. Heins*, 344 S.C. 146, 543 S.E.2d 224 (Ct. App. 2001), Waterfall argues the master erred in *sua sponte* vacating the Summary Judgment Order because more than ten days had passed from the master's entry of the Summary Judgment Order. We agree.

---

[4] The Rule 59(e) Order did not address interest accrued on the principal balance.

In *Ness*, the trial court vacated, *sua sponte*, its order denying the defendant's motion to set aside a default judgment.  350 S.C. at 401, 566 S.E.2d at 195.  On appeal, this court held the trial court lacked jurisdiction to vacate its previous order where the modification was not made pursuant to a motion to alter or amend, but on the court's own initiative, and the modification was made more than ten days after entry of the initial order.  *Id.* at 403, 566 S.E.2d at 195.  The court explained, "Although trial judges retain jurisdiction to alter judgments on their own initiative for ten days if a Rule 59(e), SCRCP, motion is filed, after ten days that jurisdiction is lost."  *Id.* at 402, 566 S.E.2d at 195.

In *Heins*, this court held that "a Family Court judge does not have the authority to alter or amend a judgment, *sua sponte*, once the judgment is more than 10-days-old."  344 S.C. at 157, 543 S.E.2d at 229.  Because the only post-trial motion filed by either party did not request the relief the family court granted, there was no vehicle through which the family court could assert jurisdiction.  *Id.* at 155-56, 543 S.E.2d at 228-29.

Our supreme court has previously held that "the ten-day limit for serving a Rule 59(e) motion is an absolute deadline."  *Overland, Inc. v. Nance*, 423 S.C. 253, 256, 815 S.E.2d 431, 432 (2018).  In *Leviner v. Sonoco Products Co.*, the circuit court entered a dispositive order on January 10, 1997.  339 S.C. 492, 493, 530 S.E.2d 127, 127 (2000).  Later—although "neither party filed a Rule 59(e) motion within the 10-day period allowed asking for clarification,"—the circuit court issued a February 10 order reversing its January 10 order.  *Id.* at 493, 530 S.E.2d at 127-28.  Rejecting this attempted reversal, our supreme court explained, "When no timely Rule 59 motion was made nor timely sua sponte order filed under Rule 59(e), the January form order 'matured' into a final judgment.  The order filed on February 10 was a nullity because the trial judge no longer had jurisdiction over the matter."  *Id.* at 494, 530 S.C. at 128; *see also Russell v. Wachovia Bank, N.A.*, 370 S.C. 5, 20, 633 S.E.2d 722, 730 (2006) ("Generally, a trial judge loses jurisdiction over a case when the time to file post-trial motions has elapsed." (footnote omitted)); *Overland, Inc.*, 423 S.C. at 256, 815 S.E.2d at 433 (reiterating that "[a] trial court does not have the power to alter or amend a final order if more than ten days passes and no Rule 59(e) motion has been served").

On December 1, 2022, Waterfall filed a Rule 59(e) motion to alter or amend the Summary Judgment Order as to the denial of prejudgment interest, escrow charges, corporate advances, and attorney's fees and costs.  After a response from Singleton and a reply from Waterfall, the master held a hearing on Waterfall's motion.  In the

Form 4 Order following this January 2023 hearing, the master sought to *sua sponte* vacate his Summary Judgment Order, stating:

> The Court's Order granting Summary Judgment to the Plaintiff [Waterfall] entered November 21, 2022, is set aside. After revisiting the facts arising from [Waterfall's] Motion to Amend that Order, filed December 1, 2022, the Court revisited the original note, mortgage, and initial assignment of the mortgage. The Court again recognized that a peculiar disconnect is apparent in the propriety of the initial recorded assignment of the note and mortgage. A peculiar question arises. The original Lender had filed bankruptcy in March 2007. The initial Lender's nominee [MERS], purported to assign the note and mortgage to a third party in June 2008. Hence, this crucial oversight by this Court requires the Court to set aside its Order dated November 21, 2022. Since the Order is set aside, [Waterfall's] Motion to Amend that Order is moot.

Although this Form 4 Order followed Waterfall's Rule 59(e) motion, it erroneously granted relief not sought in this—or any—motion. *See Heins*, 344 S.C at 155-56, 543 S.E.2d at 228-29 (holding that because the only post-trial motion filed by either party did not request the relief granted by the family court, there was no timely Rule 59(e) motion through which the family court could assert jurisdiction). Accordingly, the master lacked jurisdiction to vacate the Summary Judgment Order—and essentially grant relief to Singleton—on Waterfall's motion.

## II. The Summary Judgment Order

Waterfall next argues that the master erred in disallowing Waterfall's request for accrued interest, attorney's fees, and costs because Waterfall was entitled to recover such under the terms of the Note and Mortgage. Waterfall further asserts that the master erroneously denied Waterfall's request for escrow charges and corporate advances due to Waterfall's alleged failure to establish the reasonableness of these charges. We agree.

In the Summary Judgment Order, the master found Waterfall was the holder of the Note and Mortgage; Singleton failed to make the January 2010 Note payment and remained in default thereafter; and Waterfall was entitled to foreclose. However, the Summary Judgment Order denied Waterfall *any* interest on the principal debt

from the date of default through the date of the judgment, escrow charges, corporate advances, and attorney's fees and costs.

In *U.S. Bank Trust National Ass'n v. Bell*, this court reversed such a denial of interest, ruling the master lacked authority to revise the plain and unambiguous terms of a note as to accrued interest. 385 S.C. 364, 379, 684 S.E.2d 199, 207 (Ct. App. 2009). Reversal was required because courts are "without authority to alter an unambiguous contract by construction or to make new contracts for the parties." *Id.* at 379, 684 S.E.2d at 207. "A court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Id.* (quoting *S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 655, 667 S.E.2d 7, 13 (Ct. App. 2008)).

Here, Section 2 of the Note plainly provides, "Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.450%. The interest rate I will pay may change in accordance with Section 4 of this Note." Paragraph 4(D) of the Note sets the minimum and maximum interest rates, stating interest will "never be less than 10.450%" nor greater than 16.450%. Waterfall's right to reasonable attorney's fees and costs is found in paragraph 7(E) of the Note and paragraph 22 of the Mortgage. Because the master erred in issuing the Form 4 Order seeking to *sua sponte* vacate the Summary Judgment Order, he likewise erred in declaring moot Waterfall's Rule 59(e) motion addressing the accrued interest, attorney's fees, and costs to which Waterfall is entitled under the terms of the Note and Mortgage.

Nevertheless, like the master, we are concerned that Waterfall and its predecessors' actions (in repeatedly transferring the note, substituting the plaintiff and counsel multiple times, and failing to timely answer discovery) delayed the resolution of this action, resulting in interest exceeding the original principal balance and more than doubling the ultimate payoff amount. But the master's decision to simply void all interest, costs, and fees due to Waterfall under the Note is not supported by the record, particularly when Singleton's own actions contributed to these delays and his failure to make timely payment pursuant to his obligation under the Note triggered the foreclosure proceeding.

The transcript from the October 2022 hearing makes clear the master's reliance on the doctrine of equitable setoff in seeking to rewrite the terms of the parties' contract and deny Waterfall *any* accrued interest. This was error. The master likewise strayed in denying Waterfall recoupment of escrow and other advances on

the grounds of lack of itemization and "reasonableness." This is further concerning because Singleton did not raise these issues at the summary judgment hearing.

Section 29-3-40 of the South Carolina Code (2024) provides, in pertinent part:

> The holder of any mortgage of real property, when the mortgage contains provisions authorizing advancements thereunder for taxes, insurance premiums, public assessments and repairs, may make such advancements and, when made, they shall be secured by the mortgage and have the same rank and priority as the principal debt thereby secured and bear interest from the date of such advancements, as provided in the mortgage.

Sections 4, 5, and 9 of the Mortgage address Singleton's obligation to pay taxes, property insurance, and other items owed on the real property secured by the Mortgage and provide that to the extent Waterfall advances payment for these items, it is entitled to repayment. To the extent Waterfall (or its predecessor holders) caused the interest and costs owed pursuant to these terms to be greater than they otherwise would have been had the case proceeded in a normal fashion, the trial court should consider such on remand. But to effectively vitiate the parties' contractual terms in favor of the defaulting defendant was erroneous.

## III.  The Trial Order

Waterfall next argues that the master erred in disallowing Waterfall's request for accrued interest on the Note; holding Waterfall, although the holder of the Note, was not the holder of the Mortgage; and essentially awarding Singleton a $19,183.89 judgment. We agree.

### a. Interest

Like the Summary Judgment Order, the Trial Order denied Waterfall accrued interest on the unpaid principal balance of the Note. But Section 2 of the Note states, "Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.450%. The interest rate I pay may change in accordance with Section 4 of this Note."

Paragraph 4(D) of the Note provides the minimum and maximum interest rates, as noted above. Waterfall's witness, Giovani Amaya, testified that the interest rate

was 10.45% per annum throughout the time the loan was in default. Singleton testified to the same. Because the interest rate was never in question, the master erred in declaring Waterfall failed to "produce sufficient evidence of the LIBOR rate 45 days before each change date" and "Plaintiff failed to prove the amount of interest according to the terms of the Note."

### b. Mortgage Holder

Although the master found Waterfall is the holder of the Note and therefore entitled to enforce it under section 36-3-301 of the South Carolina Code (2025), he erred in finding Waterfall "cannot possess the Mortgage since it is held by the bankruptcy estate of People's Choice Home Loans, Inc." In *Bank of America, N.A. v. Draper*, this court explained that the holder of a note secured by a mortgage is also the holder of the mortgage:

> An assignee stands in the shoes of its assignor. *Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.,* 335 S.C. 635, 639, 518 S.E.2d 44, 46 (Ct. App. 1999); *see also* S.C. Code Ann. § 36-3-203(b) (Supp.[ ]2012) (providing a transfer of an instrument vests in the transferee any rights the transferor had). "[T]he assignment of a note secured by a mortgage carries with it an assignment of the mortgage, but . . . the assignment of the mortgage alone does not carry with it an assignment of the note." *Hahn v. Smith,* 157 S.C. 157, 167, 154 S.E. 112, 115 (1930); *see also Ballou v. Young,* 42 S.C. 170, 176, 20 S.E. 84, 85 (1894) ("The transfer of a note carries with it a mortgage given to secure payment of such note.").

405 S.C. 214, 220-21, 746 S.E.2d 478, 481 (Ct. App. 2013) (second and third alterations in original).

Moreover, Waterfall provided the master with an April 2007 order in the bankruptcy case addressing the sale of the mortgage loans. Both the Summary Judgment Order and evidence in the record establish Waterfall as the holder of the Note and the Mortgage. Thus, the master erred in finding Waterfall, although the holder of the Note, was not the holder of the Mortgage securing the Note.

### c. Insurance Proceeds

In the Trial Order, the master found:

> the Plaintiff's manipulation of the accounting shown in the payment history of the current servicer of the Note Holder, SLS, simply goes to show that when closely scrutinized the conduct of the Plaintiff and its predecessors is a continuum of mistaken, arbitrary conduct that calls out for justice in equity by awarding the Defendant these long over-due insurance proceeds. Hence, the Plaintiff must return the insurance proceeds of $19,183.89 to the Defendant.

This finding contradicts the former master-in-equity's 2012 denial of Singleton's motion to disburse these insurance proceeds and her finding that Singleton's request for release of these funds should be raised through a breach of contract counterclaim.  As an additional ground for denial, the prior master concluded Singleton "has an adequate remedy at law under the terms of the Mortgage, making any equitable relief improper."  We reverse the master's order that Waterfall return the $19,183.89 to Singleton.  On remand, the trial court should consider Waterfall's argument that "evidence shows that the proceeds were applied to ten overdue payments by a prior servicer."

**Conclusion**

We reverse and remand.  On remand, the trial court shall properly consider Waterfall's foreclosure demand; allocate the insurance proceeds pursuant to the evidence in the record; and consider any interest, escrow charges, corporate advances, and attorney's fees to which Waterfall may be entitled pursuant to the parties' contractual obligations; other relevant evidence in the record; and the findings in this opinion.

**REVERSED AND REMANDED.**

**HEWITT and TURNER, JJ., concur.**